UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HECTOR CUBERO, JR,

    Plaintiff,

v.                                                         Case No. 13-CV-428

CHARLES J. GRISDALE et al.,

    Defendants.

## DECISION AND ORDER

This is a civil rights action brought by a Wisconsin inmate under 42 U.S.C. § 1983, claiming the defendants were deliberately indifferent to the plaintiff's serious medical needs in violation of the Eighth Amendment. The case is presently before the court on the defendants' motion for summary judgment. For the reasons below, the motion will be granted as to Defendants Froelich and Thurmer but denied as to Defendant Grisdale.

### I. Background

Plaintiff Hector Cubero is a prisoner in the Wisconsin Department of Corrections (DOC) currently housed at the Wisconsin Resource Center in Winnebago, Wisconsin. From 2004 to 2012, he was housed at the Waupun Correctional Institution (WCI). During this time, Defendant Michael Thurmer was the warden of WCI and Defendants Ralph Froelich and Charles Grisdale were health care professionals who treated Cubero for a variety of mental health problems, including sleep deprivation, anxiety and self-harming behavior such as swallowing razor blade fragments.

Doctor Froelich is a licensed psychiatrist who provided consulting services, including medication management, at WCI approximately 16 hours per week during the time period relevant to this case. Dr. Froelich saw Cubero approximately 43 times between Cubero's arrival at WCI in 2004 and an appointment on December 9, 2010. Dr. Grisdale is a licensed psychologist employed by the DOC who worked at WCI during the time relevant to this case. Dr. Grisdale's duties included mental health screenings, conducting brief individual counseling and mental health monitoring, providing crisis intervention and prevention, individual psychotherapy, and psychological assessments to provide mental health services. (Defs.' Proposed Findings of Fact (DPFOF) ¶ 2, ECF No. 34.)

On December 9, 2010, Cubero saw Dr. Froelich for a medication assessment appointment. Froelich dictated the following after the appointment:

> Mr. Cubero comes in for medication follow up. He requests that he wants to go back on the diphenhydramine. Sleeping has, by his report, been a longstanding problem for him, and he has his days and nights turned around. He gets to sleep in the morning about 5:00 or 6:00 o'clock, at which time he can sleep for a couple of hours, and then after count can sleep again for an hour or two. He states that he is aware of how to shift his time, but he states that it is hard to do. I again explained how he might do it, and would require that he stay awake during the daytime hours. . . . He is not reporting thoughts of wanting to harm himself or to harm others.

(ECF No. 1-1 at 6.) Dr. Froelich did prescribe diphenhydramine (the generic name for Benadryl) following the appointment. According to Cubero, Dr. Froelich said that inmates were not prescribed sleep medicine but that drugs like Benadryl were often used because the side effects tended to help with sleep problems. (Cubero Dep. at 50–51, ECF No. 27.)

On December 27, 2010, although the actual document apparently has not been found, Cubero says he sent a psychological service request (PSR) stating he could not sleep due to anxiety to WCI's

2

Psychological Services Unit (PSU). (Compl. at 2, ECF No. 1.) Cubero sent another PSR on December 30, 2010 that is attached to his complaint. In this PSR, Cubero wrote:

> I haven't got a response back from my last request, but I still can't sleep and stay awake trying and get very frustrated and have flash backs and thoughts of hurting others and myself and when I do sleep for 3 or 4 hours I have bad dreams that wake me up having anxiety attacks. I'm too tired to focus throughout the day.

(ECF No. 1-1 at 11.) Cubero checked the box in the PSR indicating he would like to see psychology staff.

The PSR was received by the PSU on January 3, 2011, and on January 12, 2011, Dr. Grisdale responded to Cubero's request as follows: "Not sure what your self-described 'flashbacks' and homicidal [illegible] have to do with your anxiety complaints and feed cell request, but your feed cell has been approved—6 mos before next review." (*Id.*) Approval of a "feed cell" means the inmate is permitted to eat in his cell, rather than in the general population. This was an accommodation Dr. Grisdale had provided to ease Cubero's anxiety in the past. Cubero claims he sent the PSR to Dr. Froelich, but the form does not indicate as much and Dr. Froelich denies receiving or reviewing a PSR from December 27 or 30. (DPFOF ¶¶ 179, 181.)

Shortly after midnight on the morning of January 18, 2011, Cubero cut his throat. He did so after trying Dr. Froelich's time-shifting suggestion (i.e., staying awake during the day to make falling asleep at night easier) without relief, and after a 48-hour period without sleep. The cut resulted in an eight to nine inch wound and some 27 stitches. (Compl. at 3, ECF No. 1.) Cubero returned to WCI from the hospital hours after the incident, and on Dr. Grisdale's request, was placed

on observation. Dr. Grisdale visited Cubero three times that day—twice while on observation and once after he had been cleared from observation status. Cubero saw Dr. Grisdale again on February 3, 2011, and Dr. Grisdale referred Cubero to PSU staff for sleep therapy.

Cubero saw Dr. Froelich on February 16, 2011, and Dr. Froelich ultimately ended the meeting because he could not establish a rapport with Cubero. Before the meeting ended, Cubero expressed frustration with Dr. Froelich's management of his treatment, including the time-shifting suggestion. According to Dr. Froelich's report from that appointment, Cubero also stated the January 18 incident was an attempt to relieve stress, and that Cubero did not intend to take his life. (ECF No. 1-1 at 7.)

Dr. Froelich saw Cubero again on March 2—earlier than scheduled due to Cubero's complaints—and Dr. Froelich adjusted Cubero's medication. Although Cubero continued to receive treatment from Dr. Froelich, Dr. Grisdale and other PSU staff in the coming days, Cubero would hurt himself several more times while at WCI, including cutting himself four times in March. Cubero would also utilize self-harm, including cutting and an attempted hanging, after being transferred from WCI to Stanley Correctional Institution on April 21, 2011, but Drs. Froelich and Grisdale had no further contact with Cubero after he left WCI.

## II. Analysis

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the defendants have moved for summary judgment, they

4

have the initial burden of demonstrating that they are entitled to summary judgment. *Celotex*, 477 U.S. at 323. A defendant may satisfy this initial burden by pointing to the plaintiff's failure to introduce sufficient evidence to support any essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323–24. If this burden is met, the plaintiff must designate specific facts to support his case. *Celotex*, 477 U.S. at 322–24. In analyzing whether a question of fact exists, a court will construe the evidence in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255.

The legal claim brought here is for deliberate indifference, which is a particular subset of those forms of cruel and unusual punishment prohibited by the Eighth Amendment. The plaintiff in such a case must demonstrate two things. The first, which is that the harm the inmate suffered was "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), is an objective question, but it is not at issue here.[1] The second element a plaintiff must prove is that the individual defendants were deliberately indifferent to a substantial risk to the prisoner's health and safety. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). This is a subjective standard. "[T]he Supreme Court [has] held that a prison official may be held liable . . . for acting with 'deliberate indifference' to inmate health and safety only if he knows that the inmate faces a 'substantial risk of serious harm' and disregards that risk by failing to take reasonable measures to abate it." *Estate of Cole by Pardue*

---

[1] In the case of a suicide or attempted suicide, the first element is satisfied because suicide is obviously a serious harm. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Although the defendants note that Cubero repeatedly stated that his cutting was to relieve stress, not to end his life, the defendants do not argue that Cubero has failed to raise a genuine dispute of material fact as to the first element of his claim.

5

*v. Fromm*, 94 F.3d 254, 258 (7th Cir. 1996) (citing *Farmer*, 511 U.S. 825). Each defendant argues they are entitled to summary judgment because Cubero has failed to introduce sufficient evidence to establish this second element.

As a preliminary matter, all three Defendants contend that "Cubero's claim boils down to a disagreement with the medical care that he received." (Defs.' Br. 21, ECF No. 32.) They correctly note that a claim under § 1983 cannot be based on a prison inmate's mere dissatisfaction with the adequacy of medical treatment he actually received. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) ("Here, Ciarpaglini doesn't simply allege that his medication is being gratuitously withheld without a reason. Instead, he says that prison doctors decided to stop this particular course of treatment. He also says that he's been seen by prison doctors at least 10 times in 3 months, so he is not alleging that he was denied medical care. At best, he alleges a disagreement with medical professionals about his needs. This does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).").

It is true that Cubero was dissatisfied with his treatment, and it is true that that alone fails to raise a genuine dispute as to whether the defendants were deliberately indifferent to Cubero's suffering. In fact, Cubero received rather extensive treatment while at WCI, including a combination of medication, therapy and observation, and there is evidence that at times Cubero agreed with his treatment and that sometimes it worked, too.

However, there is a narrower question that the defendants cannot avoid by pointing to Cubero's history of treatment: Why didn't WCI staff check in on Cubero between December 30, 2010 and January 18, 2011? "An inmate must rely on prison authorities to treat his medical needs;

if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103. Thus, when an inmate like Cubero requests medical attention for a serious psychiatric need, and the prison's psychiatric staff fails even to see him, a jury could find that the inmate's Eighth Amendment rights were violated. *Estate of Cole*, 94 F.3d at 258.

**A. Dr. Grisdale**

Doctor Grisdale claims Cubero "did not request to be seen for psychological services" in the PSR. (ECF No. 41 at 5.) Rather, according to Grisdale, "[t]he PSR referenced his prior request for an accommodation that Dr. Grisdale then provided him." (*Id.*) The evidence on which Cubero relies suggests the contrary. Cubero did request to be seen for psychological services. That's what a PSR is—a psychological service request. Moreover, Cubero checked the box indicating he wanted to be seen in any event. A jury need not accept Dr. Grisdale's claim that he understood Cubero's request as merely one for a feed cell. A jury could find that he understood what it was and simply chose to ignore it. That would be deliberate indifference.

Dr. Grisdale also asserts "Cubero did not state any imminent intent to commit self-harm" in the PSR. (*Id.*) But there is no requirement that an inmate describe his intent to harm himself as "imminent." The question is whether Dr. Grisdale actually knew of a substantial risk of serious harm. The evidence Cubero cites—that Dr. Grisdale knew Cubero had a history of self-harm and was having thoughts of harming himself—raises a genuine issue of fact as to whether Dr. Grisdale knew of a substantial risk of harm, and ultimately, whether Dr. Grisdale's response was thus reasonable or indifferent. Accordingly, summary judgment will be denied as to Dr. Grisdale.[2]

---

[2] Defendants do cite the Seventh Circuit's decision in *Collins v. Seeman*, in which the court stated that with "suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendants: (1) subjectively knew the

7

It should also be noted that Defendants point to *Estate of Cole v. Fromm*, in which the Seventh Circuit noted that a decision made by a medical professional "is presumptively valid." 94 F.3d at 262. It is true that "[l]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Id.* However, Dr. Grisdale has not presented any evidence that his decision (to approve the feed cell without visiting Cubero or placing him on observation) was based on professional judgment, and a reasonable jury could conclude that it was not.

**B. Dr. Froelich**

Although Cubero argues that a jury could infer that Dr. Froelich reviewed the December 30 PSR because he submitted it *to* Dr. Froelich (Pl.'s Resp. Br. 5), the PSR is not addressed to Dr. Froelich and it does not refer to him (see ECF No. 1-1 at 11). Dr. Froelich denies knowledge of it. He states he did not receive or review it, or a December 27 PSR. (Froelich Decl. 41–44, ECF No. 35.) Based on this evidence, Cubero has failed to raise a genuine dispute as to Dr. Froelich's deliberate indifference because there is no evidence suggesting Dr. Froelich actually knew about Cubero's PSRs.

It bears repeating that Cubero's disagreement and frustration with Dr. Froelich's time-shifting suggestion in the December 9, 2010 appointment and his treatment in general cannot serve as the basis for Cubero's claim. *Ciarpaglini*, 352 F.3d at 331. Also, even though Cubero cut himself

---

prisoner was at substantial risk *of committing suicide* and (2) intentionally disregarded the risk." 462 F.3d at 761 (emphasis added). As noted above, there is certainly evidence that Cubero did not intend to commit suicide. However, this is not the question here because, understandably, no one argues Cubero's cutting himself for purposes of stress relief is not a serious harm in and of itself.

8

several times in March 2011 after Dr. Froelich was aware of the January 18 incident, there is no evidence that Dr. Froelich was deliberately indifferent to the risk that Cubero would keep hurting himself because Dr. Froelich was actively treating him during this time, including adjusting his medications, conferring with PSU staff and responding to Cubero's complaints by seeing him even before his scheduled appointment. Summary judgment as to Dr. Froelich will therefore be granted.

**C. Thurmer**

Cubero has also failed to introduce sufficient evidence to establish Thurmer's deliberate indifference. Cubero made complaints to DOC administration that he was not receiving adequate care. He admits his only interactions with Thurmer were "through paperwork." (Cubero Dep. 9:24, ECF No. 27 at 4.) Nonetheless, according to Cubero's theory, Thurmer had all final decision-making authority on inmate complaints and thus the denial of care to Cubero was effectively Thurmer's decision.

But Thurmer has proffered undisputed evidence that he played no role in making any decision concerning any complaint submitted by Cubero. (Defs.' Resp. to Pl.'s Proposed Findings of Fact ¶ 15, ECF No. 42; Alsum-O'Donovan Decl. ¶¶ 5, 10, ECF No. 45.) Without any suggestion in the record save for Cubero's speculation that Thurmer actually knew about Cubero's complaints, much less evidence that Thurmer officially sanctioned the decision not to give Cubero medical attention, Cubero has failed to raise a genuine dispute as to Thurmer's alleged deliberate indifference and therefore summary judgment as to Thurmer will be granted.

### III. Conclusion

For all of these reasons, Defendants' motion for summary judgment is granted as to Thurmer and Dr. Froelich. The motion is denied as to Dr. Grisdale. The Clerk is directed to set this matter on the court's calendar for further scheduling on the remaining claim.

**SO ORDERED** this 21st day of November, 2014.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court